[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-13808

_____

D.C. Docket No. 5:17-cv-00321-LSC;
13-bkc-83104-CRJ-7

In re: JAMES LEONARD HINES,

Debtor.

_____

JAMES LEONARD HINES,

Plaintiff-Appellant,

versus

SCOTTSBORO INVESTMENT GROUP, LLC,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(January 27, 2020)

Before ED CARNES, Chief Judge, ROSENBAUM, and BOGGS,* Circuit Judges.

PER CURIAM:

The United States Bankruptcy Court for the Northern District of Alabama granted James Leonard Hines' petition for Chapter 7 bankruptcy in February 2014. There was a judicial lien against his home for $896,818.20 held by Scottsboro Investment Group.  Hines and his wife owned the home as joint tenants.  He has filed three motions in the same bankruptcy court under 11 U.S.C. § 522(f) to avoid Scottsboro's lien to the extent it impairs his state law homestead exemption of $5,000.

The parties agree Hines can avoid most of the lien but disagree as to exactly how much.  The bankruptcy court determined that Hines could avoid all but $56,306.25 of Scottsboro's lien, rejecting his argument that it should be avoided except for $17,612.51.[1]  Hines appealed to the district court, which affirmed the bankruptcy court's determination.  This is his appeal.

I.

---

* Honorable Danny J. Boggs, United States Circuit Judge for the Sixth Circuit, sitting by designation.

[1] Courts, including this one, describe the effect of a motion to cut down the lien in two interchangeable ways: allowing a party to avoid all but a certain amount of a lien, and allowing a party to have a lien reduced to a certain amount.  Even though the "avoid" nomenclature does not seem as descriptive as "reduce," it is the more common usage in this area and the one employed by the parties.  So we use it.

On October 7, 2013, Hines filed a Chapter 7 bankruptcy petition. Hines v. Scottsboro Inv. Grp., 2018 WL 8807828, *1 (N.D. Ala. Mar. 29, 2018). At the time, he and his wife owned a homestead property that was subject to a first-priority mortgage held by Regions Bank in the amount of $77,387.49 and was encumbered by Scottsboro's judicial lien of $896,818.20. Id. at *3 & n.5. The bankruptcy court granted Hines' Chapter 7 petition.

In March 2014 Hines filed in the bankruptcy court the first of his three motions seeking to avoid the lien. He wanted it to be cut down to $56,009.37. He arrived at that amount by, among other things, assigning a value of $200,000 to his home, which meant that his share as a joint tenant with his wife would be worth $100,000. Scottsboro filed nothing in opposition to that first motion. The bankruptcy court granted the motion to avoid but it did so without specifying a new lien amount. Neither Hines nor Scottsboro appealed that 2014 order.

In September of 2016 Hines moved a second time in the same bankruptcy court to avoid Scottsboro's lien. This time he wanted the court to cut the lien down to $17,612.51. Hines explained in his second motion that his first one had used the wrong formula. This time Scottsboro filed an opposition, agreeing that Hines could avoid some of the lien, but only down to $103,502.57. Scottsboro derived that lower figure by valuing the home at $288,000 and by using a formula based on our Lehman decision. See In re Lehman, 205 F.3d 1255 (11th Cir. 2000).

On January 10, 2017, the bankruptcy court denied Hines' second motion to avoid the lien, finding both parties were barred from re-litigating Hines' first motion (the 2014 one) by the doctrine of res judicata. In Matter of Hines, 564 B.R. 736, 742 (Bankr. N.D. Ala. 2017). Nonetheless, the bankruptcy court went on to decide the issue of how much of Scottsboro's lien could be avoided, an issue that its 2014 order had not — explicitly at least — addressed. Id. at 744–45. Based on the property value and mortgage amount provided by Hines (without objection from Scottsboro) in 2014 and the formula proposed by Scottsboro in 2016, the court determined that the non-avoided part of the lien had a value of $56,306.25. Id.[2]

In response on February 7, 2017, Hines moved under Fed. R. Bankr. P. 1009(a) to amend his 2014 motion to avoid the lien. (For better or worse, the parties refer to that motion to amend as "the third motion," and so will we.) Rule 1009(a) provides a debtor a general right to amend his "voluntary petition, list, schedule, or statement . . . as a matter of course at any time before the case is closed." Hines argued that Rule 1009 gave him the right to amend his first motion to avoid and change his calculation from the one he had used in that first motion

---

[2] The bankruptcy court calculated the amount this way: the fair market value of the property minus the mortgage ($200,000 - $77,387.49 = $122,612.51) times 50% based on Hines' share of the equity ($122,612.51 X .50 = $61,306.25) minus the $5,000 exemption from Hines' equity ($61,306.25 - $5,000), equals a non-exempt equity amount of $56,306.25 that was still subject to Scottsboro's lien. Id.

without res judicata raising its obstructive head.  He sought the same reduction to $17,612.51 that he had sought in his second motion (the 2016 one).  The difference was that, according to Hines, Rule 1009 would act as a res judicata eraser, which he had not had the benefit of when he filed his second motion to avoid.

The bankruptcy court was not persuaded.  On February 15, 2017, it issued an order denying Hines' Rule 1009 motion, which was in effect his third motion to avoid.  It reasoned that Hines was not actually trying to amend a "petition, list, schedule or statement," which is what Rule 1009(a) is about.  The third motion was a third motion to avoid, said the bankruptcy court, and Rule 1009(a) cannot be used "to file a third Motion to Avoid Lien" and "does not renew or extend the time period for filing a Motion to Avoid Lien as [Hines] appears to suggest."

Hines appealed to the district court and raised several arguments.  The district court rejected those arguments and affirmed the bankruptcy court's order, holding that (1) the bankruptcy court had correctly applied res judicata to the second and third motion; (2) in the second motion it had correctly applied the Lehman formula in calculating the remaining value of Scottsboro's lien; (3) it correctly denied Hines' motion to amend under Rule 1009 (his third motion); and (4) the bankruptcy court did not offend the "fresh start" principle inherent in the bankruptcy code when it denied Hines' attempt to avoid the lien down to $17,612.51.  Hines, 2018 WL 8807828, at *2–7.

5

In Hines' appeal to us he has abandoned his Rule 1009 and "fresh start" principle arguments. So those issues are not before us. See Sapuppo v. Allstate Floridian Ins., 739 F.3d 678, 680 (11th Cir. 2014). Two other issues are before us: (1) whether the bankruptcy court erred by finding that its 2014 order granting Hines' first motion to avoid had res judicata effect on Hines' later motions to avoid; and (2) whether the bankruptcy court erred in its calculation of the extent to which Scottsboro's lien was avoided.[3]

## II.

Even if the bankruptcy court erred by finding that res judicata barred re-litigating the first motion to avoid, Hines still loses. Hines does not challenge any of the values used by the bankruptcy court, such as his home's value or the mortgage amount. He argues only that the bankruptcy court erred by using the Lehman formula. But the court was correct to follow Lehman.

In Lehman, this Court considered a motion to avoid a judicial lien made by movant Lowell Lehman under Section 522 of the Bankruptcy Code, 11 U.S.C. § 522. 205 F.3d at 1256. Lehman had filed a petition under Chapter 7 of the Bankruptcy Code. Id. He was entitled to a homestead exemption of $5,312 under

---

[3] At least one of the bankruptcy court's orders about Hines' motions to avoid are final, giving us jurisdiction over the appeal. See Ramos v. Ortiz (In re Ramos), 498 B.R. 401, 403 (B.A.P. 1st Cir. 2013) (holding that an order on a motion to avoid judicial lien under 11 U.S.C. § 522(f) is final and appealable).

state law.  Id.  His property was valued at $225,000, he and his wife owned it as tenants in common, and there was a $165,000 first-priority mortgage on the home. Id.

Section 522(f) permits a debtor to avoid a lien on his property to the extent it "impairs" an exemption, such as the homestead exemption.  Id. at 1256.  Section 522(f) sets out a formula for determining how much a party can avoid a lien by so that it no longer "impairs" an exemption:

> (2)(A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of—
>
> (i) the lien;
> (ii) all other liens on the property; and
> (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;
>
> exceeds the value that the debtor's interest in the property would have in the absence of any liens.

Id.  But under the literal text of the statute, Lehman would have been able to "shield his entire equity of $30,000 from VisionSpan's lien of $53,878.19, even though Lehman was entitled to a debtor's exemption of only $5,312.00."  Id.  The calculation would have been as follows:

- Add (i) $53,878.19 (the amount of the VisionSpan judgment lien); (ii) $165,000 (the amount of the mortgage held by NationsBank); and (iii) $5,312 (the amount of the exemption claimed by Lehman). The total of these figures is $224,190.19.

7

- The value of Lehman's "interest in the property . . . in the absence of any liens" is $112,500.

- $224,190.19 "exceeds" $112,500 by $111,690.

Therefore, VisionSpan's lien would be "considered to impair" Lehman's exemption by $111,690 and Lehman could avoid it to that extent, which would permit Lehman to avoid all of VisionSpan's lien of $53,878.19.

Id. We found that outcome absurd and contrary to legislative history, so in Lehman we affirmed the bankruptcy court's decision to modify the formula. Id. at 1257. Under the court's revised approach, it calculated the reduced exemption as follows:

| | |
|---|---|
| Fair Market Value | $225,000 |
| Bank Mortgage | -$165,000 |
| Owner Equity | $60,000 |
| Debtor's ½ Interest | $30,000 |
| Homestead Exemption | -$5,312 |
| Non-Exempt Equity | $24,688 |

So the bankruptcy court in Lehman concluded that the creditor's lien was reduced to $24,688; or, to the same effect, Lehman avoided all but $24,688 of the lien. Id. We affirmed that formula. Id. at 1257–58.

8

The facts of this case are materially identical, and the bankruptcy court correctly followed our Lehman precedent.  Hines, like Lehman, filed a petition under Chapter 7 of the Bankruptcy Code.  In Matter of Hines, 564 B.R. at 739.  He is also entitled to an exemption as to his homestead property under state law (but only $5,000).  Id. at 745.  Hines' property is valued at $200,000, he also owns half of it, and there is also a first-priority mortgage on the home (but it is only $77,387.49).  Id.

Hines, like Lehman, filed a motion to avoid the lien under Section 522(f).  So the bankruptcy court did exactly what the Lehman court did.  It used the same formula and calculated the following:

| | |
|---|---|
| Fair Market Value | $200,000 |
| Bank Mortgage | -$77,387.49 |
| Owner Equity | $122,612.51 |
| Debtor's ½ Interest | $61,306.25 |
| Homestead Exemption | -$5,000 |
| Non-Exempt Equity | $56,306.25 |

Hines' arguments that the bankruptcy court erred are not convincing.  He asserts that an unpublished decision, In re Taras, 131 F. App'x 167 (11th Cir. 2005), implicitly modified the formula set out in Lehman.  But unpublished decisions are not binding and certainly cannot overrule earlier published ones.

9

See, e.g., Southern-Owners Ins. Co. v. Easdon Rhodes & Assocs., 872 F.3d 1161, 1165 n.4 (11th Cir. 2017). And regardless, Taras addressed the different question of how liens junior to the judicial lien a party is trying to avoid should factor into the statutory formula. 131 F. App'x at 169. That issue is not present in this case; there was no junior lien on the Hines property.

Hines also argues that Lehman applies only when application of the literal language of the statute would have the "absurd" result of avoiding the creditor's entire lien in the debtor's property. 205 F.3d at 1258. In this case, because application of the statutory language would leave $17,612.51 of the lien unavoided, he argues that the result is not absurd, and thus Lehman does not apply.

But Lehman is not restricted to situations where the entire lien would be avoided. We explained that the statutory formula should work so that Section 522(f) would "only [entitle] the debtor to the" state law exemption in a scenario such as this. Id. at 1257. To hold otherwise would entitle Hines to just the kind of "windfall" Lehman sought to eliminate, because he would be turning a $5,000 state law exemption into a $43,693.74 exemption.[4] See id. And nowhere does Lehman suggest that two Section 522(f) statutory formulas exist — one for situations where the entire lien is avoided and one for partial avoidance scenarios.

---

[4] The $43,693.74 amount is the difference between Hines' equity in the property ($61,306.25) and the amount that the reduced Scottsboro's lien would be under Hines' formula ($17,612.51).

As a result, the district court decision is **AFFIRMED**.[5]

---

[5] Matthew A. Dunaway was appointed by this Court to represent Hines through the oral argument stage of this appeal.  By graciously accepting that appointment and representing Hines pro bono and well, Mr. Dunaway acted in the finest tradition of the bar.  His obligation to represent Hines ends with this decision.